UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-00068-TBR-LLK

GEORGE A. LUNA,                                                    PETITIONER

v.

SCOTT JORDAN                                                     RESPONDENT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner George Luna's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [DN 1.]  A response was filed by previous Respondent Aaron Smith. [DN 12.] Scott Jordan is now the Warden. The Magistrate Judge filed Findings of Fact and Conclusions of Law and Recommendation.  [DN 25.]  Luna filed objections thereto. [DN 31.]  This matter is now ripe for adjudication.  Having conducted a *de novo* review of the portions of the Magistrate Judge's report to which Luna objected,[1] the Court **ADOPTS** the Magistrate Judge's Report and Recommendations.

## I.   BACKGROUND

Following a jury trial, Petitioner was convicted of first-degree murder and first-degree arson and was sentenced to life imprisonment. *Luna v. Commonwealth*, No. 2008-SC-000652-MR, 2010 WL 4683564 (Ky. Nov. 18, 2010). The Kentucky Supreme Court reversed and remanded for "retrial or other proceedings consistent with this opinion." *Id.* at 10.

---

[1] "It is well-established that the failure to object to any portion of a magistrate judge's report results in a waiver of both district-court and appellate review of that portion." *See Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.").

Upon remand, following a new trial, Luna was convicted of the same offenses and imposed a life sentence for murder and a 20-year sentence for arson "to be served consecutively with the life imprisonment sentence." *Luna v. Commonwealth*, 460 S.W.3d 851, 886 (Ky. 2015). On February 19, 2015, the Kentucky Supreme Court reversed Petitioner's arson conviction, finding that he was entitled to a directed verdict on that charge. *Id.* at 884. The Court remanded for "entry of a new judgment consistent with this opinion." *Id.* at 889.  On June 11, 2015, the Court denied a rehearing. *Id.*

On August 27, 2015, in the Trigg Circuit Court, Petitioner filed a Motion in Vacatur of Judgment of Conviction and Sentence, which was essentially a motion to set aside his conviction pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. *Luna v. Commonwealth*, No. 2015-CA-001730–MR, 2017 WL 2492589, at *1 (Ky.App., June 9, 2017). The trial court denied the motion, and, on June 9, 2017, the Kentucky Court of Appeals affirmed. *Id.*  The present petition was filed on May 9, 2018. [DN 1.]

As this Court agrees with the Magistrate Judge's findings, this Court will only address Luna's objections.

## II.  LEGAL STANDARD

The purpose of the writ of habeas corpus is "to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996) ("AEDPA") amended the habeas statute, 28 U.S.C. § 2254, and applies to all habeas cases filed after April 25, 1996. The petition in this case was filed after that date, and

therefore, the amendments to § 2254 are applicable. *See Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004). "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403–404 (2000)). The habeas statute provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

§ 2254(b)(1). Section 2254(d), as amended by the AEDPA, states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). Section 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)" above. *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Following the modifications set forth by the AEDPA, the Sixth Circuit has explained that a state court decision may only be overturned if:

1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' or; 2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or 3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or 4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

*Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001) (internal citations omitted); *see also Williams*, 529 U.S. at 406–409; 412–13.

When performing analysis of a state court decision pursuant to § 2554(d), the first requirement is that state courts be tested only against "clearly established Federal law, as determined by the Supreme Court of the United States." In order to be clearly established law, the law relied on by the petitioner must be law that was clearly established at the time the state court decision became final, not afterward. *Williams*, 529 U.S. at 380. The federal court is also limited to law "as determined by the Supreme Court" only. *Id.* at 381–82.

Second, the Court must determine whether the state court decision was "contrary to, or involved an unreasonable application of" that clearly established law. *Id.* at 384. In order to find a state court's application of Supreme Court precedent unreasonable under § 2554, the state court's decision must have been objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Williams*, 529 U.S. at 409 (explaining, "[s]tated simply, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). An unreasonable application of federal law is distinct and different from an incorrect application of federal law. *Id.* at 410; *see also Macias v. Makowski*, 291 F.3d 447, 545 (6th Cir. 2002) (holding "the relevant question is not whether the

state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law").

Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). Stated differently, petitioners for habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. The AEDPA standard additionally provides that "a determination of a factual issue made by a State court shall be presumed to be correct." § 2254(e)(1). Factual determinations by State courts will not be overturned unless objectively unreasonable. § 2254(d)(2). The applicant, or petitioner, bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003) (holding "[u]nder AEDPA, primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence" (internal quotation marks omitted)). The findings of state appellate courts are also accorded the presumption of correctness. *Sumner v. Mata*, 449 U.S. 539, 546 (1981) (holding "[s]ection 2254(d) . . . makes no distinction between the factual determinations of a state trial court and those of a state appellate court").

"But there are exceptions to the requirement of AEDPA deference." *Montes v. Trombley*, 599 F.3d 490, 494 (6th Cir. 2010). Specifically, the "substantially higher threshold" set by the AEDPA only applies to "claim[s] that w[ere] adjudicated on the merits in State court proceedings." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); § 2254(d)(1). When a petitioner for habeas relief seeks review of claims that were *not* adjudicated on the merits in state court, "then the pre-AEDPA standards of review apply." *Montes*, 599 F.3d at 494 (citing *Cone*, 556 U.S. at 472). Under the pre-AEDPA standard, "questions of law, including mixed questions of law and fact, are reviewed de novo, and questions of fact are reviewed under the clear-error standard." *Id.* (citing *Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008)). *See also Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011) ("Claims that were not 'adjudicated on the merits in State court proceedings' receive the pre-AEDPA standard of review: de novo for questions of law (including mixed questions of law and fact), and clear error for questions of fact.")

"Under *Harrington v. Richter*, '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015), cert. denied sub nom (quoting *Harrington*, 562 U.S. at 99). In situations "when a state court makes clear that it is deciding a claim both on the merits and on procedural grounds, [the Sixth Circuit has] held that a federal habeas court may nonetheless review that court's merits analysis and, if appropriate, apply AEDPA deference to that adjudication." *Id.* at 461 (citing *Brooke v. Bagley*, 513 F.3d 618, 624 (6th Cir. 2008)).

### III. DISCUSSION

## A.  Ground One: Improper admission of testimony by Bill Compton

In addressing Luna's argument of improper admission of testimony by Bill Compton, the Magistrate Judge found that the admission of testimony was not improper on three different grounds.

First, the Magistrate Judge held that even if the trial court did err, the error was not of constitutional magnitude.  [DN 25 at 8.]  Luna argues that Compton's testimony was a violation of Daubert.  Daubert held that, under the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  There is no constitutional requirement that evidence be screened through Daubert standards.  *Bojaj v. Berghuis*, 702 F. App'x 315, 321 (6th Cir. 2017).  Rather, "state rules of evidence are the primary safeguard against unreliable expert testimony being put before the jury, and the Due Process Clause serves as a distant backstop to these rules." *Id.*

Luna argues that the testimony of Compton violated *Daubert* because it was not relevant or reliable.  [DN 31 at 4.]  The admission of Compton's testimony was based on the Kentucky Rules of Evidence.  *Luna v. Commonwealth,* 260 S.W. 3d 851, 864 (Ky. 2015).  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Ege v. Yukins,* 485 F.3D 364, 375 (6th Cir. 2007) (citing *Estelle v. McGuire,* 502 U.S. 62, 68 (1991)).  However, that does not preclude a Court from finding a due process violation.  The evidentiary ruling must be "so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).  The "denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Brown v. O'Dea,* 227 F.3d 642, 645 (6th Cir. 2000).

The Court does not find the admission of Compton's testimony to be so egregious. Compton did not solely rely on accelerants to label the fire "incendiary." *Luna,* 260 S.W. 3d 851 at 864). Compton testified to relying on the "debris, the path traveled by the fire, the lack of significant fire load…and the severe and localized damage to the floor where Hendrickson's body was found." *Id.* at 866. Luna also had the opportunity to cross-examine and present witnesses challenging Compton's testimony. The Court does not find Compton's statement labeling the fire "incendiary" was a "crucial, critical highly significant factor." Therefore, Luna was not denied fundamental fairness. The Court adopts the Magistrate Judge's finding on this matter.

Second, the Magistrate Judge held that the federal court is bound by the state court's holding of no Due Process error. A district court must give deference to a state court finding unless the presumption of correctness is refuted by clear and convincing evidence. § 2254(e)(1). "Deference does not by definition preclude relief." *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003)).

Luna argues that he has met his burden of clear and convincing evidence. He states that it was an unreasonable determination of the facts for Compton to testify that the fire was incendiary [DN 31 at 6.] When making its determination, the trial court had access to the arson investigator's report, Luna's witnesses, and could also rely on affidavits, deposition testimony and existing precedent. *Luna,* 460 S.W. 3d 851, 865 (Ky. 2015) (citing *Com v. Christie,* 98 S.W.3d 485, 488-489 (Ky. 2002). The arson investigator's report and Luna's own witnesses provided sufficient evidence that Compton used "valid science" for his methodology. *Luna,* 469 S.W.3d 851, 865. The Court does not find that Luna has met his burden of clear and convincing evidence. The Court is satisfied with the amount of evidence present for the trial court to base its determination of reliability. Therefore, the Court adopts the Magistrate Judge's finding.

Third, the Magistrate Judge held that even if there was a *Daubert*-based error of constitutional magnitude, it was harmless.  The Court agrees with Luna that it must first apply *Chapman* and determine whether the error was "harmless beyond a reasonable doubt." *Chapman v. California,* 368 U.S. 18, 24 (1967).  In *Chapman,* the Court found the error *harmful* to petitioners because the "the state prosecutor's argument and the trial judge's instruction to the jury *continuously* and *repeatedly* impressed the jury". *Id.* at 829 (emphasis added).  It does not appear that the statements made by Compton were so pervasive.  Further, there was testimony offered that refuted the statements made by Compton.  Direct testimony and Luna's cross-examination of Compton elicited testimony about the deficiencies and limitations of the hydrocarbon detector used. *Luna*, 460 S.W. 3d 851, 867.  The possible error of Compton's testimony did not go unchecked.

Further, Luna states in his objections that this error "prevented the jury from giving credence not only to Luna's explanation" about how the fire started.  [DN 31 at 7.]  He further reasoned that this was "indicative of the fact that they found Luna guilty of Arson First." [*Id.*]  However, the Kentucky Supreme Court reversed Luna's arson conviction. *Luna,* 460 S.W. 3d 851, 889.  Any error that led to Luna's arson conviction has been remedied by the Kentucky Supreme Court reversing the conviction and is now moot.  Luna does not argue that the testimony of Compton influenced the jury to find him guilty of first-degree murder.  The Court need not expound on whether the error was harmless beyond a reasonable doubt.  Luna's argument that he is entitled to summary judgment on this claim is moot as well.  Even if this Court was inclined to grant relief to Luna there is no relief to be granted.  Therefore, the Court adopts the holding of Magistrate Judge but for different reasoning.

**B.  Ground Two: Improper admission of hearsay statements of Hendrickson**

In addressing Luna's argument of improper admission of hearsay statements of Hendrickson, the Magistrate Judge found that Luna's claim was without merit for three reasons.

First, the Magistrate Judge found that even if the admission of testimony was an error, it was not one of constitutional magnitude. The Kentucky Supreme Court found that the statements by Hendrickson were not hearsay because they were not admitted for the truth of the matter asserted. *Id.* at 872. Luna argues that it was improper for the Kentucky Supreme Court to affirm on different grounds than argued. However, this argument ignores clearly established Kentucky law. "Yet, it is well settled that we are not bound by the analysis of the Court of Appeals and may affirm on any grounds supported by the record." *S. Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 926 (Ky. 2013).

The Court starts with the premise that "[O]ut of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine the witness." *Johnson v. Renico,* 314 F.Supp.2d 700, 706 (E.D. Mich. 2004) (citing *Crawford v. Washington,* 541 U.S. 36 (2004). This is an issue of state law under the Kentucky Rules of Evidence. As such, this Court is bound by that finding. *See Renico,* 314 F.Supp. 2d at 706 ("Any claim that the trial court improperly admitted this evidence as an exception to the hearsay rule is therefore noncognizable in federal habeas review.").

Second, the Magistrate Judge found Luna's argument that the Confrontation Clause was violated does not warrant relief. More specifically, he asserts that the state court did not address the issue of specific intent for the forfeiture by wrongdoing exception.  [DN 31 at 10.]  However, the Kentucky Supreme Court did address this issue—albeit not extensively.

The Kentucky Supreme Court stated that based on Kentucky law, inference of intent when nontestimonial statements are at issue is permissible. *Id.* (citing *Parker v. Commonwealth,* 291 S.W.3d 647 (Ky. 2009)). Due to the amount of evidence—multiple statements to different people—there was enough evidence for the trial court to infer intent. In order for the evidence to be admitted under the forfeiture exception, the proponent only need to establish a basis by a preponderance of the evidence. *Id.* at 871. This burden was met.

Luna argues this inference of intent is not permitted under *Giles v. California,* 554 U.S. 353 (2008)*.* Under *Giles,* specific intent is required. However, the *Giles* Court only decided specific intent is necessary for testimonial statements. *Id.* at 358. The Kentucky Supreme Court seemingly found Hendrickson's statements to be nontestimonial as it allowed an inference of intent. *Luna,* 460 S.W.3d at 872. ("Our evidentiary rule operates for nontestimonial statements and, as such, could be interpreted to allow an inference of intent."). The Court, however, did not address this issue at length because it deemed the evidence admissible because it is not hearsay. *Id.* Therefore, even if it was error to admit these statements under the forfeiture by wrongdoing exception, the evidence was still admissible as it was not hearsay.

Finally, the Magistrate Judge found the Court's finding that Luna received a fair trial to be reasonable. The Court agrees. The Court in *Luna* stated, "Luna did not receive a fundamentally unfair trial as a result of the admission of Hendrickson's statements." *Id.* at 873. Based on the weight of the evidence the Court considered, this Court agrees that this was a reasonable finding. As such, Luna is not entitled to relief.

## C.  Ground Three: Improper admission of prior bad acts

Luna argues the trial court erred in admitting evidence of his prior bad acts at the police station following his arrest. The Magistrate Judge found Luna's argument was without merit.

Luna was handcuffed at the police station waiting to be booked. *Id.* at 873. He stood up from his chair and approached a seated trooper. *Id.* The trooper turned around, found Luna standing over him, and pushed Luna away. *Id.* Luna fell and hit his head on a bench. *Id.* Luna stood up and demanded to be bonded out and even threatened the trooper and the trooper's family if he was not bonded out. *Id.* He was later taken to the hospital to receive staples to close the wound. *Id.* The Kentucky Supreme Court found the "trial court abused its discretion in allowing the evidence to be admitted into evidence at trial." *Id.* at 874.

The Magistrate Judge found this error was not of constitutional magnitude. "[H]abeas relief [is] warranted, only if an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness." *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Id.* (quoting *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000)). This Court is to give deference to the findings of the state court. *Id.*

Here, the Kentucky Supreme Court found the admission of this evidence was harmless error because "Luna's statement to police and Luna's own trial testimony included mentions of the police-station altercation". *Luna*, 460 S.W.3d at 874.  The Court further stated, "we do not believe this prior-bad-acts evidence substantially swayed the jury to convict Luna of first-degree murder or first-degree arson." *Id.* Luna correctly states the Court reversed his conviction for first-degree arson. However, that does not necessarily mean the admission of this evidence contributed substantially to sway the jury. Furthermore, if this evidence swayed the jury to convict Luna of arson, relief has already been granted for that conviction. Based on the other evidence available to

the jury, this Court finds Luna still received a fair trial and this evidence was not so crucial or critical as to substantially sway the jury to find Luna guilty of first-degree murder.

### D.  Ground Four: Improper Cross-examination of Luna

Luna argues his Sixth and Fourteenth Amendment rights were violated when the Commonwealth cross-examined him on previous fires. At trial, the Commonwealth questioned Luna about three fires that occurred at his previous residence in Illinois. *Id.* at 875. The Commonwealth also questioned Luna bout an apartment fire in the early 90s. *Id.* Luna denied any involvement with these fires except for a garage fire he admitted to accidentally starting. *Id.* He also acknowledged he received insurance proceeds from the fires. *Id.* The Kentucky Supreme Court found it was improper to mention these prior bad acts but was harmless error. *Id.* at 877. The Magistrate Judge also found Luna was not entitled to relief because there was no error of constitutional magnitude.

In Luna's objections, he states this evidence prevented the jury from considering he acted in self-defense. "[T]he proper standard by which to gauge the injurious impact of the admission of constitutionally infirm evidence is to consider the evidence before the jury absent the constitutionally infirm evidence." *Brumley v. Wingard,* 269 F.3d 629, 646 (6th Cir. 2001). If the Court found that the admission of this evidence rose to a constitutional violation—which it does not—Luna still would not be entitled to relief. Without considering the cross-examination about the fires, the jury had evidence that Hendrickson had "skull fractures, subdural hemorrhaging, and bruises to the brain away from the location of the skull fractures. There was no disagreement in the evidence that blunt-force trauma, not fire, caused Hendrickson's death." *Luna,* 460 S.W.3d at 885. As the Kentucky Supreme Court stated, if the evidence "improperly influenced the jury, it caused the jury to convict [Luna] of first-degree arson." *Id.* at 877. Hendrickson's cause of death

was blunt force trauma and not related to the fire. Therefore, Luna's conviction of murder is constitutionally sound. The Kentucky Supreme Court already granted Luna relief from the errors causing the arson conviction by vacating it.

**E.  Ground Five: Admission of Illinois Civil Judgment**

Luna argues his Sixth and Fourteenth Amendment rights were violated when the trial court allowed the Commonwealth to admit evidence of an Illinois civil judgment against Luna. Progressive Insurance paid under Luna's policy after a fire at his residence. *Id.* at 878. Progressive obtained a judgment against Luna and his then fiancée on July 13, 2007 for $11, 527.72. *Id.* The entry of this judgment was one day before "Luna's Firebird burned, for which Luna fraudulently attempted to recover insurance proceeds." *Id.* The Kentucky Supreme Court held the admission of this judgment was proper because it points to motive for murder. Luna objects to this finding because "Luna was not the only party found liable pursuant to this judgment". [DN 31 at 19.]

"Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh*, 329 F.3d at 512 (internal quotations omitted). Luna argues this evidence was admitted in violation of *Michelson v. U.S.,* 335 U.S. 469 (1948). However, the Court in *Michelson,* considered whether it was permissible for the prosecution to cross-examine character witnesses. *Id.* at 473-475. Character evidence is not at issue here.

The outstanding judgment against Luna is relevant to his motive. The Commonwealth's theory against Luna was Luna burned the Firebird vehicle and attempted to file a fraudulent claim with Progressive Insurance. *Luna,* 460 S.W.3d at 869. Luna asked Hendrickson to help with the fraudulent claim and she initially helped. *Id.* Hendrickson later wanted no part of Luna's insurance scheme and turned Luna into investigators. *Id.* at 870. "The judgment and its associated financial

burden bolster Luna and Hendrickson's insurance-fraud scheme". *Id.* at 878. Luna's argument that this evidence is not connected to the murder because he was not the only liable party holds no weight. Therefore, he is not entitled to relief.

### F. Ground Six: Improper Cross-examination

Luna has withdrawn consideration of this issue. [DN 31 at 21.] The Court recognizes Luna's withdrawal and adopts the Magistrate Judge's reasoning on this issue.

### G. Ground Seven: Alternative Perpetrator Defense

Luna argues his Sixth and Fourteenth Amendment rights were violated when the trial court denied Luna's motion to present evidence of an alternate perpetrator. The Kentucky Supreme Court found the trial court properly denied Luna's motion because the evidence did not indicate both opportunity and motive as required by Kentucky law. *Id. at* 881. Luna attempted to admit evidence that one of Hendrickson's ex-boyfriends murdered her. *Id.* Hendrickson and her ex-boyfriend ended their relationship a few months before Luna moved in with Hendrickson. *Id.* Luna asserted the ex-boyfriend abused and threatened Hendrickson's life. *Id.* The Kentucky Supreme Court held Luna could not present the theory because he was not "entitled to parade before the jury every person who bore some dislike for the victim, and that is all Luna did here." *Id.* (internal quotations omitted).

Luna cites to *McCoy v. Louisiana,* 38 S.Ct. 1500 (2018) to support his position. In *McCoy,* the Court restated its position that "the right to defend is personal, and a defendant's choice in exercising that right must be honored out of that respect for the individual which is the lifeblood of the law." *Id.* at 1507 (internal quotations omitted). However, this does not give a defendant complete control over the way a trial proceeds and the evidence admitted. A holding to the contrary would render the Rules of Evidence meaningless. "Although prevailing notions of fundamental

fairness...require that criminal defendants be afforded a meaningful opportunity to present a complete defense…, a defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions". *Miller v. Brunsman,* 599 F.3d 517, 525 (6th Cir. 2010). Here, the Kentucky Supreme Court did not err in finding Luna had not presented a sufficient nexus between Hendrickson's murder and her ex-boyfriend. Without more evidence, Luna was not entitled to present this theory to the jury. Luna has not pointed to any evidence that the state court's decision was an unreasonable determination of the facts, nor an unreasonable application of clearly established federal law. As such, Luna is not entitled to relief.

## H.  Ground Eight: Intoxication and Extreme Emotional Disturbance

Luna argues his Sixth Amendment and Fourteenth Amendment rights were violated when the trial court did not instruct the jury on the defense of intoxication and extreme emotional disturbance.  In order to receive an instruction on the affirmative defense of intoxication and extreme emotional disturbance, Kentucky courts require a defendant to assert "some evidence justifying a reasonable inference of the existence of a defense". *Luna,* 460 S.W. 3d at 882.

The defense of intoxication requires evidence that "[negates] the existence of an element of the offense." *Id.* However, Kentucky courts also requires "evidence reasonably sufficient to prove that the defendant was so drunk that he did not know what he was doing." *Id.* "Simple drunkenness is not sufficient; instead, a more advanced degree of drunkenness is required." *Id.* (internal quotations omitted). The Kentucky Supreme Court found Luna did not submit any proof indicating an advanced degree of drunkenness. "[T]he findings of a state court are presumed to be correct and can only be contravened if [the petitioner] can show by clear and convincing evidence that they are erroneous. *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003). In his objections, Luna repeats the evidence that the Kentucky Supreme Court addressed. The Kentucky Supreme

16

Court found Luna did have a blood alcohol content of .209. *Luna,* 460 S.W.3d at 882. However, this was partly due to alcohol he continued to drink after Hendrickson was killed and he drove away. *Id.* The Court also found Luna was able to provide a detailed account of what occurred between him and Hendrickson and therefore was not under an advanced degree of drunkenness. *Id.* Luna has not presented this Court with any clear and convincing evidence that he presented clear and convincing evidence that he was in an advanced degree of drunkenness. Therefore, he is not entitled to relief.

In order to prove extreme emotional disturbance, "a defendant must offer evidence that he suffered a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from an impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *Id.* at 883. Luna stated, after Hendrickson stabbed him and retrieved a handgun, he thought about his children and the possibility that they would grow up without their dad. *Id.* The Court found that Luna had not presented evidence that he was enraged, inflamed, or disturbed at any moment. *Id.* Here, Luna presents the same evidence. He has not provided clear and convincing evidence that the trial court and state Supreme Court's findings were unreasonable. As such, he is not entitled to relief.

## I.  Ground Nine: Directed Verdict on Arson

Luna argues he was entitled to a directed verdict on arson in the first degree and his conviction violates due process. The Kentucky Supreme Court talked at length about Luna's arson conviction. The Court found he was in fact entitled to a directed verdict because the evidence clearly pointed to Hendrickson dying prior to the fire started and therefore was not occupying the trailer. *Id.* at 884-886. Luna now asks for relief because he argues his murder conviction was equally affected.

Luna is not entitled to habeas relief because the state court has already granted him relief from the arson conviction. Further, Luther has not provided any evidence that that the murder conviction is unreasonable or contrary to established Federal law. As the Kentucky Supreme Court stated, Luna's sentence is not altered by the directed verdict on the arson charge because the jury made a recommendation of life imprisonment for the murder conviction. That conviction is not disturbed by the Court's finding and Luna has not presented sufficient evidence to hold otherwise. Therefore, he is not entitled to relief.

## J.  Ground Ten: Prosecutorial Vindictiveness

Luna argues the prosecution improperly engaged in prosecutorial vindictiveness by seeking aggravators after Luna successfully appealed. The Kentucky Supreme Court acknowledged there are two methods to prove prosecutorial vindictiveness—actual and presumptive vindictiveness. *Id.* at 887. The Court found Luna did not argue actual vindictiveness, but rather presumptive. *Id.* The Court found there was no presumptive vindictiveness for several reasons. First, the prosecution in the second trial was different from the first. *Id.* Second, the jury convicted on the statutory aggravators. *Id.* at 888. Third, Luna was indicted and tried for a capital crime at both trials. *Id.* Finally, the Court found the extra time the prosecution had due to the granted continuance allowed the prosecution more time to exercise its discretion. *Id.*

The Magistrate Judge found the Commonwealth did not file the notice of intent to seek aggravators until Luna moved to continue his second trial date—not immediately after his appeal. The Commonwealth informed Luna on August 23, 2011 that if he withdrew his motion for a continuance, he would receive a sentence of no more than life imprisonment with the possibility of parole. If he continued with the motion, however, the Commonwealth would look into aggravating factors. One week later, the Commonwealth made an official plea offer to Luna and

Luna rejected it. Luna, in his objections agrees with this timeline. Luna objects to the Magistrate Judge's finding that the Commonwealth's statements were during plea negotiations because an offer was not made until a week later. However, plea negotiations are not limited to the moment the official offer is made.

The Magistrate Judge cited to *Reese v. Warden London Correctional Inst.,* 2011 WL 3353850 (S.D. Ohio, July 14, 2011) and this Court finds the case persuasive. In *Reese,* Reese was initially indicted on two counts of aggravated assault. *Id.* at 1. Reese filed for a continuance which was granted. *Id.* Subsequently, Reese was re-indicted for felonious assault and attempted aggravated murder. *Id.* Reese argued this was due to prosecutorial vindictiveness. The Court found Reese had not shown vindictiveness because "after reviewing the evidence…the prosecutor concluded that [Reese] had been undercharged…and now that speedy trial time requirements were no longer a problem due to [Reese's] requested continuance, this case should be returned to the Grand Jury and re-charged." *Id.* at 7. The Court further stated, "[t]hat does not give rise to presumption or affirmatively demonstrate that the prosecutor re-indicted Defendant on more serious charges in order to punish him for exercising his rights". *Id.*

The same is true here. The prosecution was within its rights to seek the aggravators. Without more evidence, Luna has not shown evidence of actual or presumptive vindictiveness. Therefore, he is not entitled to relief.

## K. Ground Eleven: Directed Verdict on Robbery Aggravator

Luna argues there was a lack of evidence to prove he killed Hendrickson in order to steal her truck. The Kentucky Supreme Court found Luna did not preserve this issue. Further, Luna himself admitted this issue was unpreserved. [DN 12-3 at PageID 220.] However, the state

Supreme Court elected to review this issue under a palpable error standard. *Luna,* 460 S.W.3d at 888. The Court found no error of any kind. *Id.*

Even if this Court found Luna's claim was not procedurally defaulted—which it does not—and evaluated the merits of Luna's argument, he still is not entitled to relief. The Court found that although the evidence was not overwhelming, there was sufficient evidence to reach a jury.

The prosecution presented evidence that Luna needed to obtain a vehicle to travel to different job locations. *Id.* A friend of Hendrickson also testified that Hendrickson told her Luna kept trying to get her vehicles. *Id.* Hendrickson owned two vehicles at that time but one of them was wrecked, leaving only the truck. *Id.* at 889. The Court found that based on all the evidence, a reasonable jury could determine the aggravator applied. Here, this Court finds the same. Luna has not provided evidence that it was unreasonable for the Court to allow this argument to proceed to the jury. Luna states he had permission to use the truck but does not provide more evidence. His bare assertion is not enough. Therefore, he is not entitled to relief.

**L.  Ground Twelve: Reversal of Murder Conviction**

Luna argues his conviction for first degree murder cannot stand because it is prejudiced by the evidence presented on the arson charge. This Court has previously addressed the evidence presented to the jury for the murder conviction. The evidence that supports Luna's murder conviction is distinct from the evidence of the fire. As previously stated, there is no evidence that the fire contributed to Hendrickson's death at all. A reversal of the arson conviction has no bearing on Luna's murder conviction. Luna correctly states the standard the Supreme Court set forth in *Fahy v. State of Conn.*, 375 U.S. 85 (1963). The Court stated the appropriate question is "whether there is a reasonable possibility that the evidence complained of might have contributed to the

conviction." *Id.* at 86-87. Here, there is no reasonable possibility that the evidence of the fire contributed to Luna's murder conviction. As such, Luna is not entitled to relief.

## M. Ground Thirteen: Ineffective Assistance of Trial Counsel

Luna argues the trial court erred in allowing, and trial counsel was ineffective for not objecting to, the Commonwealth's pursuit of a murder conviction with a first-degree robbery aggravator because Luna had not been indicted for first-degree robbery. Additionally, Luna claims that the jury should have been instructed on first-degree robbery during the guilt/innocence phase of trial.

In Kentucky, it is well-established that an aggravating circumstance need not be listed in the indictment. *See Luna,* 2017 WL 2492589 at 2 (citing *St. Clair v. Commonwealth,* 140 S.W.3d 510, 560 (Ky. 2004). Therefore, under Kentucky law, it was not error for Luna's counsel not to object to the aggravator. *Strickland v. Washington,* 466 U.S. 668 (1984) sets for the standard for ineffective assistance of counsel. Luna must first show "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. Here, Luna has not shown either. Luna has not shown his counsel made any error and therefore cannot show he was prejudiced. As such, Luna is not entitled to relief.

## N. Ground Fourteen: Ineffective Assistance of Appellate Counsel

Luna's argument here is almost identical to the previous ground. Here, he argues his appellate counsel was ineffective for not presenting his argument in Ground Thirteen to the Kentucky Supreme Court on appeal. Again, an error must be present, and the error must prejudice the defendant in order to show ineffective assistance. As stated above, there was no error committed at the trial level. Without an error on the trial level, Luna's appellate counsel was not

ineffective by not presenting this issue on appeal. Therefore, Luna is not entitled to relief on these grounds.

## O.  Ground Fifteen: Ineffective Assistance of Counsel: Self-Defense

Finally, Luna argues his counsel was ineffective by failing to argue he was immune from criminal prosecution under KRS §503.085(1). KRS §503.085(1) states in relevant part,  "A person who uses force as permitted in KRS 503.050, 503.055, 503.070, and 503.080 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, unless the person against whom the force was used is a peace officer". "Because immunity is designed to relieve a defendant from the burdens of litigation, it is obvious that a defendant should be able to invoke KRS 503.085(1) at the earliest stage of the proceeding." *Rodgers v. Com.*, 285 S.W.3d 740, 755 (Ky. 2009). The Commonwealth has the burden to prove probable cause exists to proceed with prosecution. *Id.*

Here, even if Luna's counsel moved for a *Rodgers* hearing pre-trial there is not a reasonable probability that the Commonwealth would not have proven probable cause. "Probable cause is not a high bar." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018). The evidence presented at trial certainly would have been enough to meet the probable cause standard.

If this Court determined Luna's counsel committed an error by failing to move for a *Rodgers* hearing pre-trial, he still is not entitled to relief. *Strickland* requires the defendant be prejudiced by the error. Here, Luna still would have faced trial because the probable cause standard was met. It cannot be said that he was prejudiced in his defense by not having a hearing. Further, the jury was instructed on the theory of self-defense and rejected Luna's argument. As such, Luna is not entitled to relief.

## P.  Certificate of Appealability

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability (COA) may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

"Where a district court has rejected the constitutional claims on the merits, ... [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. This Court finds that no reasonable jurist would find it debatable that Luna's claims have merit. As such a COA is denied.

**IV. Conclusion**

The above matter having been referred to the United States Magistrate Judge, who has filed his Findings of Fact and Conclusions of Law, objections having been filed thereto, and the Court having considered the same,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** the Findings of Fact and Conclusions of Law as set forth in the report submitted by the United States Magistrate Judge.

**IT IS FURTHER ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [DN 1] IS **DISMISSED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED** as to each claim asserted in the petition.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 16, 2020

cc: George A. Luna
222876
KENTUCKY STATE REFORMATORY
3001 W. Highway 146
LaGrange, KY 40032
PRO SE